# BYRD MOTOR COMPANY v. FIDELITY AND CASUALTY CO.

Court En Banc. May 28, 1925.

No petition for Certiorari was filed.

1. **Appeal and error. Pages of the record must be cited in assignment of error to admission of testimony.**
    Under the rules of the Court of Appeals an assignment of error to the admission of testimony will not be considered unless the pages of the record with reference to the testimony are cited.

2. **Insurance. Terms "seizure" and "confiscation" held not synonymous in policy indemnifying automobile dealer against confiscation under liquor laws.**
    In a policy of insurance indemnifying automobile dealer against losses resulting from failure of customer to complete contract of purchase because of seizure and confiscation for violation of liquor laws, held the terms are not synonymous. Confiscation is a drastic proceeding and is a broader term than seizure.

3. **Insurance. Recovery on policy of insurance indemnifying automobile owner against loss on sale contracts because of seizure and confiscation under liquor laws is denied where prerequisites for conviction under the law were not proved.**
    Under policy indemnifying automobile dealer against loss directly caused as result of customer's failure to complete sale contract because of seizure and confiscation for violation of liquor laws, recovery cannot be had unless prerequisites for confiscation under the laws are proved.

Appeal from Chancery Court, Hamilton County; Hon. W. B. Garvin, Chancellor.

Affirmed.

C. A. Noone, of Chattanooga, for appellant.

Creed F. Bates, of Chattanooga, for appellee.

OWEN, J. The complainant has appealed from a decree of the chancery court of Hamilton county dismissing its bill. Both the complainant and the defendant are corporations. The bill charged that the defendant on September 21, 1921, executed for and on behalf of the complainant an automobile confiscation bond, for the sum of $40,000, for and in consideration of a premium of $200.83, which premium had been paid. A copy of the bond was made an exhibit to complainant's bill. Said bond sued on is in the following words and figures, to wit:

"(Automobile Confiscation Bond: Form 1463.)

"The Fidelity and Casualty Company of New York hereinafter called the company, in consideration of an agreed premium, does hereby agree to indemnify Byrd Motor Company

of . Chattanooga, Tennessee,' hereinafter called the obligee, against such direct pecuniary loss as may be sustained by the obligee as a result of the failure of any customer of the obligee to complete his contract with the obligee for the purchase of a motor vehicle when such failure is due to the seizure and confiscation, while this bond is in force, by the authorities of the United States of America or of any state, county or city therein, under the provisions of any statute, providing for the seizure and confiscation of a vehicle found to be illegally transporting intoxicating liquors, of any motor vehicle, owned by the obligee or upon which the obligee retains a purchase-money lien, while such vehicle is rightfully in the possession of such customer, under conditional contract of sale or chattel mortgage.

"The foregoing obligation is subject to the following conditions:

"(1) The liability of the company as to any such vehicle is limited to the actual amount of the obligee's pecuniary interest therein at the time of such seizure and confiscation, not exceeding the amount unpaid at such time under such conditional contract of sale, lien, or chattel mortgage.

"(2) The company shall be under no liability as respects any such vehicle, which, at the time of such seizure and confiscation, is in the custody or control of any officer, partner, or employee of the obligee; or which the obligee knowingly permits others to use in violation of any statute prohibiting the transportation of intoxicating liquors.

"(3) Upon the discovery by the obligee of such seizure of any such vehicle the obligee shall give immediate written notice thereof to the company at its home office, 92 Liberty street, New York City. Affirmative proof of loss under oath, together with full particulars of the loss claimed by the obligee as a result of such seizure, shall be filed with the company at its home office within three months of such discovery.

"(4) Upon payment of any claim hereunder the company shall be subrogated to all rights of the obligee against the purchaser of the vehicle forming the subject of such claim, and the obligee shall execute all papers required, and shall cooperate with the company, to secure to the company such rights.

"(5) Without prejudice to the rights of the obligee as respects any such vehicle covered hereunder while this bond is in force, the company may cancel this bond .as to additional vehicles by its written notice stating when such cancellation takes effect served on the obligee, or sent by registered mail to the obligee at the address hereinbefore stated, at least five days prior to the date the cancellation takes effect.

"(6) Subject to the foregoing provisions and conditions this bond shall apply to all motor vehicles that the obligee has outstanding in the possession of purchasers under conditional contracts of sale or chattel mortgages on the date of the execution hereof, and to all such vehicles hereafter delivered to such purchasers so long as this bond shall remain in force.

"In witness whereof, the company has caused these presents to be executed by its duly authorized representative this 9th day of September, 1921.

"The Fidelity & Casualty Co. of New York,

"[Seal.]  By Noah H. Grady, Attorney."

Among other things, the bill alleged and charged that on March 6, 1922, the complainant delivered on title retention contract to one Robert Hundley one secondhand Buick touring car, motor No. 314260, taking at the time of said transaction a title retention note in the sum of $250, which note is long past due and wholly unpaid; and said note is hereto attached as "Exhibit B" and asked to be taken and considered as a part hereof, but same need not be copied in issuing process.

That during the time the said bond was in force, and on April 4, 1922, the automobile above described was seized by some of the prohibition agents of the United States of America, on account of an actual or alleged violation of the prohibition laws of the United States; and that as the direct and proximate result of said seizure and confiscation, the conditional vendee refused to make any further payments on said note; and by reason of the said failure and refusal, and the failure and refusal of the defendant to comply with the conditions of its bond, as hereinafter mentioned, the complainant has lost said sum of $250, the amount called for by said note, which loss, complainant charges, was one against which the defendant agreed to indemnify, and for which defendant should compensate complainant.

Complainant alleges that in and by the bond heretofore mentioned, the defendant agreed to indemnify complainant for any loss it might suffer "as a result of the failure of any customer of the obligee (complainant) to complete his contract with the obligee for the purchase of a motor vehicle, when such failure is due to the seizure and confiscation" of an automobile on which complainant had title retention, by reason of violating the prohibition laws, etc.; and complainant avers that the failure of said Hundley to comply with his contract was due to the seizure and confiscation aforesaid.

Complainant further alleges that the principal of said note, together with interest and attorney's fee, was due to it by said Hundley on the automobile described, at the time of the seizure and confiscation thereof.

Complainant avers that at the time of the seizure and confiscation of said automobile, it was not in the custody or under the control of any officer, partner, or employee of complainant.

Complainant avers that immediately upon the discovery or learning of the seizure, the defendant was notified of such seizure, and has made affirmative proof of loss under oath, all as required by section 3 of said bond.

Complainant avers that after said seizure and confiscation, the defendant, by and through its attorneys or agents, entered into negotiations with the officials of the United States courts, and bought said automobile from the prohibition officers, for the sum, as complainant is informed, of $75; and after so buying same, defendant tendered it to complainant in full satisfaction of its claim under the bond, which tender complainant refused to accept for the reason that the automobile was not worth in excess of $125, but complainant did agree to accept said car and $125 in money or $250 in money, in full settlement of its claim—which defendant refused to pay, and negotiations were then dropped.

That by reason of the seizure and confiscation of said automobile as aforesaid, and by reason of the failure of the conditional vendee to complete his contract on account of said seizure and confiscation, the defendant is indebted to the complainant under the terms and conditions of said bond in said sum of $250, together with interest and attorney's fees, as provided in said note, for which demand has been made, but payment refused, and is still refused.

The prayer of the bill was for process. The oath to the defendant's answer was waived, and upon final hearing complainant prayed to be given a decree for the sum of $250, with interest from March 6, 1922, and attorney's fees of 15 per cent. and costs of suit. The note of Robert Hundley for the sum of $250, executed March 6, 1922, payable to complainant, and for one secondhand Buick touring car, motor No. 314260, and in which note complainant retained the title to said Buick car, was made an exhibit to the bill. This note provided that it should be paid in ten monthly installments of $25 each, beginning April 6, 1922, and an installment falling due on the 6th of each succeeding month until the ten payments were due.

The defendant answered and denied that the automobile purchased by Hundley from complainant had ever been confiscated. The answer alleged that Hundley was a notorious bootlegger and known to complainant to be such; that the automobile was of little value; that the $100 paid in cash was all the automobile was worth, and the defendant was not liable under the closing paragraph, or condition 2, of the bond. It was conceded the automobile had been seized, but it was denied that it was ever confiscated. The answer also alleged

that the complainant had agreed to intervene in the United States courts and set up its right as title holder, but failed to do so; that nothing was done by the complainant to procure the release of the automobile until November 12, 1922, when the defendant offered to procure the release of the automobile, and that the defendant paid the United States government $75 to procure the release of the automobile, paid the defendant the sum of $83.50, $55.50 being for storage on the automobile at the rate of $6 per month. It was stored in complainant's garage, and $28 was paid by the defendant to the complainant for certain repairs the complainant had placed on said automobile, and that the automobile had been restored to complainant in good shape, and the defendant pleaded that it had compromised the matters by paying the $75 to the government and the repair bill, and the storage bill, and this settlement was pleaded as an equitable estoppel against the complainant.

The complainant took the deposition of Victor Williams, a federal prohibition officer, with headquarters at Chattanooga, and Mr. L. H. Dooley, the manager of the complainant. The defendant took the deposition of one Bill Jones, who operated an automobile business in Chattanooga. Upon the hearing Chancellor Garvin dismissed complainant's bill. He filed a memorandum opinion, which is made a part of the record, and his opinion is as follows:

"Complainant is engaged in the business of selling automobiles, and this is a suit to recover upon a policy of insurance, denominated a 'bond,' whereby the defendant agreed to indemnify the complainant against direct pecuniary loss resulting from the failure of any customer to complete his contract of purchase of a motor when such failure is due to the seizure and confiscation of the vehicle by federal or local authorities under the provisions of any statute providing for the seizure and confiscation of a vehicle found to be illegally transporting intoxicating liquors. Under the terms of the bond, the indemnity extends to the case where the complainant is the owner of the vehicle in question and to the case where complainant has a purchase-money lien upon the vehicle under a conditional sale or chattel mortgage.

"On or about March 6, 1922, complainant sold a secondhand automobile to one Robert Hundley for the price of $350, of which Hundley paid $100 cash, and gave complainant his title retention note for $250, no part of which he has paid. On or about April 5, 1922, two state officers, deputy sheriffs, found this car in the suburb of Hill City, with 15 gallons of whiskey in it, and seized it.

"Under the terms of the bond sued on, before liability against the defendant attaches, there must not only be seizure but

confiscation, and this must be because the vehicle is found to be illegally transporting intoxicating liquor. I do not think that section 3350, to which I am referred, has application.

"Coming, then, to the question of the confiscation of the car upon the ground that it was found to be illegally transporting intoxicating liquor, I remark in the first place that the evidence in the case is too meager to show that the car was subject to seizure or confiscation upon this ground, unless we indulge in unwarranted inferences or resort to unwarranted presumptions. Upon this question all that appears is that the car was seized with the whiskey in it. There is an entire absence of proof that the whiskey was untaxed, or was illegally possessed or was being illegally transported. The situation of the car, whether it was in a public place or on private property, whether it was in charge or any one or not, and the circumstances of the seizure, are not detailed. Whether the car was standing still in some owner's garage or upon a public street, or was moving or had moved, or was about to move, with the whiskey in it, is not shown. I note that section 26 of title 2 of the National Prohibition Act (U. S. Comp. St. Ann. Supp. 1923, § 10138½mm) casts upon the owner or lienor desiring to assert claim to or against a vehicle seized under the act the burden of showing his innocence of notice that the vehicle was being used, or was to be used, for illegal transportation of liquor; but, so it would seem to me, before this presumption against them can arise, the fact must be shown that the vehicle was being so used. This fact is not shown in this case.

"But, assuming that the circumstance of whiskey being in the car made a prima facie case for the seizure and confiscation of the car, the proof does not show any confiscation. It is true that Mr. Williams, the federal enforcement officer, to whom the deputy sheriff turned the car over, testifies that the car was seized and confiscated, but his deposition shows that in his view seizure and confiscation are one and the same thing. Section 26 of title 2 of the National Prohibition Act, above referred to, provides, however, two methods of confiscation. One is where some one in charge of the vehicle is arrested; then upon the conviction of the person so arrested the court shall, unless good cause to the contrary is shown by the owner, order the sale of the vehicle, the proceeds to be turned into the United States treasury, after the payment of expenses and fees and allowable liens on the car. In the instant case no person was arrested, and there was, of course, no conviction and no order of sale based on conviction. The other method is where no one shall be found

claiming the vehicle. In such case, the fact of seizure and a description of the vehicle shall be advertised once a week for two weeks in some newspaper and by posted handbills, and if no claimant shall appear within ten days after the last publication, then the vehicle shall be sold. In the case at bar, there was no advertisement and no sale.

"What took place was as follows: In a few days after the state officers seized the car, they turned it over to the national enforcement officer. He or they (the evidence is not clear which) stored it with the complainant in this case  Then ensued correspondence and negotiations between complainant and defendant, and the officer with a view to an adjustment and settlement of the matter. Finally, on November 15, 1922, an agreement was reached between Col. Bates representing the defendant, and the officer representing the government, with the consent and direction of the United States district attorney, whereby the defendant paid to the clerk of the court the sum of $75, the appraised value of the car in its then condition, and the government released and discharged the car from the seizure, and 'restored' it to the full possession of Byrd Motor Company. The agreement in full appears as Exhibit 3 to the deposition of Mr. Williams. Defendant also paid to complainant its storage charges amounting to $50.50 and a further bill of $28.50 for repairs made by defendant upon the car. The car is now, and from the time of the seizure has been, in the possession of the complainant. I do not think the evidence shows a confiscation. The bill will be dismissed.

"Complainant's first exception is sustained. It would have been competent for defendant to show the general reputation of Hundley as a bootlegger as tending to show notice to complainant, but the evidence objected to does not show this. The exceptions to Jones' testimony upon the grounds stated are overruled. It is not incompetent or irrelevant upon the question of the extent of the loss, but in the view I take of the case, is immaterial.

"Garvin, Chancellor."

Upon complainant's bill being dismissed, it excepted to the decree of the court in dismissing its bill, prayed and was granted an appeal to this court, and has assigned four errors.

The first error is as follows:

The court erred in dismissing complainant's bill and taxing it with the costs of the cause; because the proof showed that the complainant suffered such a loss as came within the terms of the policy or bond, against which the defendant agreed to indemnify it, and

complainant should have had a decree in its favor for the sum sued for.

The second and third assignments are in substance the same as the first, and they will not be set out in full in this opinion.

The fourth assignment relates to the overruling of complainant's objection to the testimony of the witness Jones. Counsel for the defendant challenges the sufficiency of these assignments, insisting, under the rules of our court, the same are not sufficient and do not comply with our rules.

The fourth assignment does not comply with the rules of this court, and it is overruled, because no page of the record is cited with reference to Jones' testimony.

See the rules of the Court of Civil Appeals in 148 Tenn. p. 713, and which rule governing the assignments of error was adopted by the present Court of Appeals May 19, 1925, and this same rule has been the rule of the Supreme Court for many years.

We are of opinion that the first assignment is sufficient, and we will consider the first, second, and third assignments together. The fourth assignment is overruled.

The controlling questions involved in this lawsuit are as follows:

(1)   Was the car confiscated?

(2)   Was there a compromise settlement between the complainant and the defendant?

The opinion of Chancellor Garvin fully covers the case as we understand it, and we are of the opinion that he reached the right conclusion in dismissing complainant's bill.

The facts show that just the day before the first installment was due on Hundley's note to the complainant, the automobile bought by Hundley from complainant was taken in charge by two deputy sheriffs somewhere in Chattanooga; the spot or place is indefinite. Neither one of these deputy sheriffs testified. Hundley was never arrested. Victor Williams, the prohibition agent, testified there was 15 gallons of whiskey in the automobile. It appears that the deputy sheriff turned this automobile over to Williams. Williams placed it in complainant's garage April 6, 1922, the very day that the first installment on the $250 note matured. Complainant began to charge storage on April 7, 1922.

Complainant notified the defendant insurance company of the seizure, and claimed that the car had been confiscated. Quite a bit of correspondence passed between the complainant and the defendant, but the car was never sold, neither was it ever advertised for sale, and Hundley was never arrested or tried. There is no proof that Hundley was about the car when it was taken by the deputy sheriffs or Williams.

It appears that when the defendant agreed to pay $75 to the government and $83 to the complainant, to cover storage and repairs, Mr. Dooley, the manager of the complainant, thought the complainant was to get the $75, and as complainant did not get the $75, but it went to the United States government, this suit was instituted. Before suit was instituted, complainant insisted that it should receive $125 as the car had depreciated from the time it was seized in April, 1922, to November; that the season for secondhand cars was about closed in November; and that it was hard to dispose of secondhand cars that late in the year.

The defendant countered on this proposition by insisting that it had made a settlement of the entire matter and bought its peace when it got the car released and paid the storage and repair bill.

Another significant incident connected with Mr. Dooley's testimony is that he collected $28 for repairs on the car and then testified in his deposition that the car was not worth over $30; that it was practically worthless.

Bill Jones testified that if the car was worth $350 in March, 1922, when it was sold to Hundley, it should not have depreciated over $100 by November, 1922.

It will be noticed that the words "seizure" and "confiscation" throughout the bond or policy sued on are always connected by the conjunction "and." We are of the opinion that there is a distinction between seizure and confiscation. Confiscation is a drastic proceeding, and we are of opinion that it is a broader term than seizure. Confiscate means to appropriate private property as forfeited to the public use or treasury, especially because of the wrongdoing of the owner.

Complainant failed to prove that Hundley, the purchaser, was found illegally transporting intoxicating liquors, or that the liquors found in the automobile were connected in any way with Hundley. We agree with the chancellor that the complainant failed to make out its case.

Section 26 of title 2 of the National Prohibition Act, passed October 28, 1919, and generally known as the Volstead Act, and which section provides for the seizure and destruction of liquor and the sale of the vehicle or apparatus used in transporting liquor in violation of the law, has been construed a number of times by various Judges of the federal or United States District Courts. A number of cases have been reported in the Federal Reporter. In these cases we find the following doctrine or rule announced:

"The prerequisite to seizure and forfeiture or confiscation of property under section 26 must be in strict pursuance of the terms of the statute, and the following elements are essential:

"(1) That an officer of the law discover some person in the act of illegally transporting liquor in the vehicle.

"(2) The seizure of the liquor so transported or possessed.

"(3) The seizure of the vehicle and the arrest of the person.

"(4) That the officer proceed against the person and retain the vehicle, unless redelivered to the owner on giving bond.

"(5) Conviction of the person and order of the sale of the vehicle.

"(6) Distribution of proceeds."

See U. S. v. Slusser (D. C. Ohio) 270 F. 818; U. S. v. One Cadillac Touring Car (D. C. Mich.) 274 F. 470; Reo Atlanta Co. v. Stern (D. C. Ga.) 279 F. 422; U. S. v. One Packard Motor Truck (D. C. Mich.) 284 F. 394.

We are of opinion there is no error in the decree of the chancellor in dismissing complainant's bill. All the assignments of error are overruled and disallowed, and the judgment of the lower court is affirmed. The defendant will recover of the complainant and his surety on appeal bond the costs of the cause, including the costs of appeal, for which execution will issue.

All concur, except Clark, J., absent, and Snodgrass, J., dissenting.